# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| In Re:<br><br>**LEGACY CARES, INC.,**<br><br>          Debtor. | Case No. 2:23-bk-02832-DPC<br><br>Chapter 11<br><br>**ORDER (I) AUTHORIZING THE RETENTION OF MCA FINANCIAL GROUP, LTD. AS FINANCIAL ADVISOR, EFFECTIVE AS OF THE PETITION DATE, AND (II) GRANTING RELATED RELIEF** |

Upon consideration of the *Debtor's Application for Entry of an Order (I) Authorizing the Retention and Employment of MCA Financial Group, Ltd. as Financial Advisor, Effective as of the Petition Date, and (II) Granting Related Relief* (the "Application")[1], filed by the above-captioned debtor (the "Debtor"); the Court having reviewed the Application, the Bierman Declaration; the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. § § 157 and 1334, (ii) venue is proper in this district pursuant to 28 U.S.C. § § 1408 and 1409, (iii) this is a core

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application

proceeding pursuant to 28 U.S.C. § 157(b), (iv) the terms and conditions of MCA's employment, including, but not limited to, the Fee and Expense Structure set forth in the Engagement Letter and summarized in the Application, are reasonable; (v) MCA is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code; and (vi) notice of the Application was sufficient under the circumstances; after due deliberation the Court having determined that the relief requested in the Application is necessary and essential for the Debtor's reorganization and such relief is in the best interests of the Debtor, its estate, its creditors, and all parties in interest; and good and sufficient cause having been shown,

**IT IS HEREBY ORDERED THAT:**

1. The Application is GRANTED as set forth herein.

2. The Debtor is authorized, pursuant to sections 327(a) of the Bankruptcy Code, Bankruptcy Rule 2014(a), and Local Rule 2014-1, to employ and retain MCA as its financial advisor in accordance with the terms and conditions set forth in the Engagement Letter and to pay fees and reimburse expenses to MCA on the terms and at the times specified in the Engagement Letter, as may be modified by this Order.

3. The terms of the Engagement Letter attached hereto as **Exhibit 1** are approved in all respects except as limited or modified herein.

4. The following language in paragraph 9 of the Engagement Letter is hereby deleted: "Further, in no event shall the total aggregate liability of MCA relating to the services provided hereunder or otherwise arising under this Agreement to Client and its

successors and assigns exceed the total amount of fees received and retained by MCA hereunder."

5. MCA's compensation, as set forth in the Engagement Letter, including, without limitation, the Fee and Expense Structure, will be subject to Court review and approval pursuant to sections 330 and 331 of the Bankruptcy Code. MCA shall be compensated and reimbursed upon submission and approval of fee applications according to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable orders of this Court.

6. The Debtor shall be bound by the indemnification, contribution, reimbursement, exculpation and other provisions of the Engagement Letter and will indemnify and hold harmless MCA and the other Indemnified Parties, pursuant to the Engagement Letter, subject, during the pendency of this Chapter 11 Case, to the following modifications:

   a. No Indemnified Person shall be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court;

   b. The Debtor shall have no obligation to indemnify any Indemnified Person, or provide contribution or reimbursement to any Indemnified Person for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from such Indemnified Person's bad faith, gross negligence, willful misconduct, fraud, breach of fiduciary duty, if any, or self-dealing; (ii) for a contractual dispute in which the Debtor alleges the breach of MCA's contractual obligations unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to applicable law ; or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing, to be a claim or expense

for which such Indemnified Person should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified by this Order; and

    c. If, before the earlier of (i) the entry of an order confirming a Chapter 11 plan in this Chapter 11 Case (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing this Chapter 11 Case, any Indemnified Person believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution and reimbursement obligations under the Engagement Letter (as modified by this Order), including, without limitation, the advancement of defense costs, MCA must file an application therefor in this Court, and the Debtor may not pay any such amounts to MCA before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by MCA and the other Indemnified Persons for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify the Indemnified Persons. All parties in interest shall retain the right to object to any demand by any Indemnified Person for indemnification, contribution or reimbursement.

7. The Debtor and MCA are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

8. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry notwithstanding the possible applicability of Bankruptcy Rules 6004(g), 7062 or 9014.

9. The relief granted herein shall be binding upon any Chapter 11 trustee appointed in this Chapter 11 Case, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of this Chapter 11 Case to case under chapter 7.

10. To the extent that this Order is inconsistent with the Engagement Letter, the terms of this Order shall govern.

11. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

**DATED AND SIGNED ABOVE.**

# EXHIBIT 1


Miller Buckfire & Co., LLC
787 7th Avenue, 5th Floor
New York, New York 10019
www.millerbuckfire.com

As of March 15, 2023

Douglas Moss
Legacy Cares, Inc.
6321 S Ellsworth Rd
Suite 146
Mesa, AZ 85212-3301

Dear Douglas:

This letter (the "*Agreement*") confirms the terms and conditions of the agreement by which Legacy Cares, Inc., an Arizona 501(c)3 non-profit, (together with its direct and indirect affiliates and subsidiaries, present and future, including any future bankruptcy estate, the "*Company*") has engaged Miller Buckfire & Co., LLC and its affiliate Stifel, Nicolaus & Co., Inc. (together, "*Miller Buckfire*") as its exclusive financial advisor and investment banker for the purposes set forth in Section 1 hereof. If appropriate in connection with performing its services for the Company hereunder, Miller Buckfire may utilize the services of one or more of its affiliates, in which case references herein to Miller Buckfire shall include such affiliates.

Section 1.    Services.    Miller Buckfire will perform the following services, in each case as requested by the Company and to the extent Miller Buckfire deems necessary, appropriate, feasible and consistent with its role as financial advisor and investment banker to the Company:

a.   *General Services.* Miller Buckfire will familiarize itself with the business, operations, properties, financial condition and prospects of Bell Bank Park (the "Facility") and advise and assist the Company in structuring and effecting the financial aspects of the transactions defined below.

b.   *Transaction Services.*

   i.   If the Company pursues a Transaction, Miller Buckfire will:

      A.   Assist with the Transaction;

      B.   Identify and contact potential acquirers;

      C.   Participate or otherwise assist in negotiations with acquirers;

        D.        Prepare and develop a Facility sale memorandum for use in soliciting potential acquirers (a "*Sale Memorandum*"); and

        E.        If the Company determines to commence one or more cases under chapter 11 of the Bankruptcy Code (collectively, the "*Bankruptcy Case*"), assist the Company in a section 363 sale of the Facility or other sale procedure approved by the bankruptcy court.

    ii.    "*Transaction*" means each disposition to one or more third parties, in one or a series of related transactions, either of all or a material portion of the debt securities of or interests in the Facility by the security holders of the Facility or of all or a material portion of the assets (including the assignment of any executory contracts) or businesses of the Company and/or the Facility.[1] A Transaction may be by means of a sale or exchange of debt securities, options or assets, a lease of assets with or without a purchase option, a merger, consolidation or other business combination, an exchange or tender offer, a recapitalization, the formation of a joint venture, partnership or similar entity, or any transaction similar to any of the foregoing, whether pursuant to a restructuring plan (a "*Plan*") under title 11 of the United States Code (the "*Bankruptcy Code*") or otherwise. A Transaction is deemed to occur upon the earlier of consummation of such Transaction, confirmation of a Plan, and entry into an agreement in principle or definitive agreement to effect such a Transaction, provided such Transaction is subsequently consummated.

    iii.    Any Sale Memorandum will be based solely upon information supplied by the Company. The Company will be solely responsible for the accuracy and completeness of any Sale Memorandum. Any Sale Memorandum will be used solely as set forth in Section 1.b.i.D. The Company agrees not otherwise to use, reproduce, disseminate, quote or refer to any Sale Memorandum at any time in any way, unless Miller Buckfire consents in advance in writing.

Section 2.    Fees and Expenses.    In consideration of Miller Buckfire's services under this Agreement, the Company agrees to pay and reimburse Miller Buckfire in cash on the terms and at the times set forth below:

a.    "*Monthly Fee*": A fee of $75,000, due in advance on the date first written above and the corresponding day of each subsequent month during the term of this Agreement. The final Monthly Fee will be reduced to correspond to any partial month of service.

b.    "*Transaction Fee*":

    i.    A fee, due upon first receipt of Aggregate Consideration for each Transaction, equal to the greater of:

        A.    $1,500,000, or

---

[1] For the sake of clarity, the Company is a non-profit and, as such, does not have equity.

    B. The sum of 1.50% of the first $185,000,000 of Aggregate Consideration plus 3.00% of Aggregate Consideration in excess of $185,000,000.

  ii.  "*Aggregate Consideration*" means the total amount of cash and the fair value of all securities, other property or value paid or payable, directly or indirectly, by the acquiring party (the "*Acquirer*"), whether to the Company or its bankruptcy estate, in connection with a Transaction or a related transaction, and includes each of the following: First, the face amount of any indebtedness, securities or other property "credit bid" in any Transaction and amounts paid by the Acquirer pursuant to covenants not to compete, employment contracts, employee benefit plans or other similar arrangements and to holders of any warrants, stock purchase rights, convertible securities or similar rights and to holders of any options or stock appreciation rights, whether or not vested. Second, the value of any liabilities (including obligations relating to any capitalized leases and the principal amount of any indebtedness for borrowed money) existing on the acquisition's balance sheet at the time of a Transaction or repaid or retired in anticipation of a Transaction (if such Transaction takes the form of a merger or sale or exchange of stock). Third, the value of any current assets not sold to the Acquirer, but reduced by the value of any current liabilities not assumed by the Acquirer, each such value as of the closing date of the Transaction and as determined by the Company and Miller Buckfire in good faith. Fourth, if a Transaction takes the form of a recapitalization (including, without limitation, an extraordinary dividend, a spin-off, split-off or similar transaction), the fair market value (on the closing date of the Transaction and as determined by Miller Buckfire in good faith) of the equity securities retained by existing security holders or creditors following the consummation of such transaction and any cash, securities (including securities of subsidiaries) or other consideration received by such security holders or creditors in exchange for or in respect of securities of or claims in connection with such transaction (all being deemed to have been paid in such transaction). Such fair value market shall be determined, as of the date of payment, by the Company and Miller Buckfire in good faith. Any payment to be made subsequent to a Transaction shall be included in Aggregate Consideration at the Transaction-date at present value of such future payment, as determined by the Company and Miller Buckfire in good faith. Payment, for purposes of determining Aggregate Consideration, is not limited to cash payment, but includes the issuance or delivery of securities, property or other value.

c.  *Treatment of Multiple Fees.*

  i.  50% of the fifth and subsequent Monthly Fee actually paid by the Company will be credited once against any Transaction Fee payable by the Company hereunder.

  ii.  More than one fee may be due on account of multiple transactions that are not a mutually-dependent series. Each such fee is due in accordance with the terms hereof.

Legacy Cares, Inc.
As of March 15, 2023

iii. More than one fee may be due on account of a single transaction or one mutually-dependent series of transactions. Each such fee is due in accordance with the terms hereof.

d. *Expense Reimbursement.* The Company will promptly reimburse Miller Buckfire's reasonable, out-of-pocket expenses incurred in connection with this Agreement, including Miller Buckfire's performance hereunder and any costs of enforcement, on a monthly basis. These expenses include the reasonable fees and expenses of Miller Buckfire's counsel, including in connection with defending retention and fee applications (without the requirement that such counsel be approved by the Bankruptcy Court), its consultants and other advisors, and also include travel and lodging expenses, data processing and communication charges, research and courier services. The Company shall also reimburse Miller Buckfire for any sales, use or similar taxes (including additions thereto) arising in connection with this Agreement. The Company's obligations under this section are independent from and do not limit the Company's obligations under the Indemnification Provisions.

Section 3.  Term and Termination. This Agreement may be terminated by either party at any time following 90 days after the date of this Agreement by 21 days' advance written notice to the other party. The Company agrees that if it terminates this Agreement, it will pay Miller Buckfire its fees and reimbursable expenses accrued through the date of termination on or before such date, and it will pay Miller Buckfire any fee described in Section 2 that arises from any transaction of a kind defined in Section 1 that occurs prior to the second anniversary of termination. Following a notice of termination, Miller Buckfire shall continue to perform the Transaction Services in good faith up to the effective date of the termination. This Section 3 and Section 4.a, b, e, g, i and k shall survive termination of this Agreement. Termination of this Agreement shall not affect or impair the Company's continuing obligations under the Indemnification Provisions.

Section 4.  Additional Provisions.

a. *Further Services.*

   i. Except as set forth in this Section 4.a, services to be provided under this Agreement are limited to those set forth in Section 1.

   ii. The Company agrees that Miller Buckfire and its affiliates have made no expressed or implied commitment, by this Agreement or otherwise, to underwrite, place or purchase any financing or securities, or to act in any other capacity in connection therewith, which commitment shall be set forth in a separate underwriting, placement agency or other appropriate agreement or amendment hereto.

b. *Indemnification.* The Company agrees to indemnify and exculpate Miller Buckfire and certain related persons in accordance with the indemnification and exculpation provisions (the "*Indemnification Provisions*") attached to this Agreement, which are integral to it and incorporated by reference.

c. *Information.*

   i. In order to coordinate effectively the Company's and Miller Buckfire's activities, the Company will promptly inform Miller Buckfire of any discussions, negotiations or

4

Case 2:23-bk-02832-DPC    Doc 141    Filed 05/25/23    Entered 05/25/23 17:42:06    Desc
Main Document    Page 10 of 20

    iii.    In any Bankruptcy Case, the Company agrees that Miller Buckfire's post-petition compensation pursuant to this Agreement shall be entitled to priority as expenses of administration under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code and shall further be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect in connection with any financing orders entered by the Bankruptcy Court (which carve-outs shall be adequate to enable the Company to pay Miller Buckfire's fees and expenses, fully and promptly, without detriment to any other similarly-situated administrative claims). The Company shall use its best efforts to ensure that any cash collateral order, debtor-in-possession financing order or similar order in the Bankruptcy Case permits the use of cash collateral and financing proceeds for the full and prompt payment of all of Miller Buckfire's fees and expenses, including transaction fees, and has the agreements of the lenders (or parties whose cash collateral is being used) that Miller Buckfire's fees and expenses shall be paid at the times, on the terms, and from the sources set forth in this Agreement. If such orders and carve-outs are or become insufficient to provide the foregoing assurances, Miller Buckfire shall then have no obligation to provide further services under this Agreement.

    iv.    Each party hereto acknowledges and agrees that Miller Buckfire's restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required during the term of Miller Buckfire's engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit of Miller Buckfire's services hereunder could not be measured merely by reference to the number of hours to be expended by Miller Buckfire's professionals in the performance of such services. Each party hereto also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Miller Buckfire and that the actual time and commitment required of Miller Buckfire and its professionals to perform its services hereunder may vary substantially from time to time, creating "peak load" issues for Miller Buckfire. In addition, given the numerous issues with Miller Buckfire's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Miller Buckfire's services for engagements of this nature in an out-of-court context, each party hereto agrees that the fee and expense arrangements hereunder are reasonable under each applicable legal standard.

e.    *Limited Engagement.*

    i.    By its services or otherwise, Miller Buckfire assumes no responsibility for the Company's underlying business decision to pursue or not to pursue any business strategy or to effect or not to effect any transaction, including those defined in Section 1. The Company agrees that Miller Buckfire shall have no obligation and no responsibility to provide accounting, audit, "crisis management," or business consultant services for the Company and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements, nor to provide any fairness or valuation opinions or any advice or opinions with respect to solvency in connection with any transaction. The Company

    inquiries regarding transaction of a kind defined in Section 1, including such as have occurred during the six months preceding this Agreement.

  ii.  The Company shall make available to Miller Buckfire all information concerning the Company and the Facility that Miller Buckfire reasonably requests in connection with the services to be performed and shall provide Miller Buckfire with reasonable access to the Company's officers, directors, employees, accountants and other advisors and agents. The Company represents that all information furnished by it or on its behalf to Miller Buckfire will be accurate and complete to the best of its knowledge. The Company recognizes and confirms that in advising the Company and completing its engagement hereunder, Miller Buckfire will be using and relying on publicly available information and on data, material and other information furnished to Miller Buckfire by the Company and other parties. It is understood that in performing under this Agreement Miller Buckfire may assume and rely upon the accuracy and completeness of, and is not assuming any responsibility for independent verification of any such information. The Company will promptly notify Miller Buckfire if it learns of any material inaccuracy or misstatement, in any material omission from, any information delivered to Miller Buckfire.

  iii.  The Company acknowledges that Miller Buckfire may communicate electronically in the course of this engagement and that it will use commercially reasonable procedures to check for the most commonly known viruses, but that electronic communications cannot be guaranteed to be secure or error-free, and may be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected and unsafe to use. The Company accordingly agrees that Miller Buckfire shall have no liability to the Company with respect to any error or omission arising from electronic communication or the Company's reliance thereupon, so long as Miller Buckfire acts in good faith and employs customary electronic communications procedures.

d. *Bankruptcy Case.*

  i.  In the event of a Bankruptcy Case, the Company shall apply promptly to the Bankruptcy Court for approval pursuant to sections 327(a) and 328(a) of the Bankruptcy Code of this Agreement and Miller Buckfire's retention upon the terms of this Agreement, including all of Section 2, not subject to the standard of review under section 330 of the Bankruptcy Code, and shall use its best efforts to obtain Bankruptcy Court authorization thereof. Absent such approval pursuant to a final order acceptable to Miller Buckfire in every respect, Miller Buckfire shall have no obligation to provide any services under this Agreement following commencement of a Bankruptcy Case. The Company shall supply Miller Buckfire and its counsel with a draft of such retention application and the related proposed order sufficiently in advance to enable Miller Buckfire and its counsel to review and comment thereon.

  ii.  Prior to commencing a Bankruptcy Case, the Company shall pay Miller Buckfire all amounts then due and payable to it, whether pursuant to this Agreement or otherwise.

5

Case 2:23-bk-02832-DPC Doc 141 Filed 05/25/23 Entered 05/25/23 17:42:06 Desc
Main Document Page 12 of 20

confirms that it will rely on its own counsel, accountants and similar expert advisors for legal, accounting, tax and other similar advice.

    ii. Miller Buckfire has been retained under this Agreement as an independent contractor with no fiduciary or agency relationship to the Company or to any other party. Miller Buckfire has no authority to bind, represent or otherwise act as agent, executor, administrator, trustee, lawyer or guardian for the Company, nor does Miller Buckfire have the authority to manage money or property of the Company. Miller Buckfire advice and services, however rendered, are intended solely for the benefit and use of the Board of Directors of the Company in considering the matters to which this Agreement relates. Except as expressly contemplated by this Agreement, the Company agrees not to use, reproduce, disseminate, quote or refer to any such advice and services at any time in any way, unless Miller Buckfire consents in advance in writing.

f. *Miller Buckfire's Affiliates.* The Company understands that Miller Buckfire is a subsidiary of Stifel Financial Corp. and that Stifel Financial Corp. and its affiliates (collectively, "*Stifel*") comprise a full service securities firm and a commercial bank engaged in securities trading and brokerage activities, as well as providing investment banking, asset management, financing, and financial advisory services and other commercial and investment banking products and services to a wide range of corporations and individuals. In the ordinary course of Stifel's trading, brokerage, asset management, and financing activities, Stifel may at any time hold long or short positions, and may trade or otherwise effect transactions, for its own account or the accounts of customers, in debt or equity securities or senior loans of the Company. Stifel recognizes its responsibility for compliance with federal securities laws in connection with such activities. In addition, Stifel may have and may in future have investment and commercial banking, trust and other relationships with parties other than the Company, which parties may have interests with respect to the Company. Furthermore Stifel may have fiduciary or other relationships whereby Stifel may exercise voting power over securities of various persons, which securities may from time to time include securities of the Company. The Company acknowledges that Stifel may exercise such powers and otherwise perform its functions in connection with such fiduciary or other relationships without regard to its or Miller Buckfire's relationship to the Company hereunder. Stifel will not provide any confidential information to any of its representatives whose job is to engage in securities transactions without appropriately restricting and monitoring any such representative's securities transaction activity in compliance with Stifel's internal policies and applicable securities laws.

g. *Identity of Company.*

    i. Applicable law and regulation may require Miller Buckfire to obtain, verify and record information that identifies entities that enter into a formal relationship with it, and the Company agrees to provide Miller Buckfire with its tax or other similar identification number and other identifying documents as may be necessary for Miller Buckfire to comply with applicable law and regulation. Miller Buckfire may screen the Company against various databases to verify its identity.

  ii.  The Company represents and warrants that it does not appear on the Specially Designated Nationals and Blocked Persons List of the Office of Foreign Assets Control of the United States Department of the Treasury, nor is it a prohibited party according to other U.S. government regulatory or enforcement agencies.

h. *Advertisements.* Miller Buckfire may place advertisements in financial and other newspapers and journals at its own expense describing its services to the Company hereunder; provided that Miller Buckfire will submit a copy of any such advertisement to the Company for its approval, not to be unreasonably withheld or delayed.

i. *Jurisdiction, Choice of Law and Waiver of Trial By Jury.* THIS AGREEMENT HAS BEEN NEGOTIATED, EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN NEW YORK, NEW YORK. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO ITS PRINCIPLES OF CONFLICTS OF LAWS. REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH SUCH PARTY IRREVOCABLY CONSENTS AND AGREES THAT ANY AND ALL CLAIMS OR DISPUTES BETWEEN THE PARTIES PERTAINING TO THIS AGREEMENT SHALL BE BROUGHT IN A STATE OR FEDERAL COURT OF COMPETENT JURISDICTION LOCATED IN NEW YORK COUNTY OR, IN THE EVENT OF A BANKRUPTCY FILING BY THE COMPANY, THE BANKRUPTCY COURT OR ANY COURT HAVING APPELLATE JURISDICTION OVER SUCH BANKRUPTCY COURT. BY THIS AGREEMENT, EACH PARTY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT. EACH PARTY WAIVES ANY OBJECTION BASED ON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND CONSENTS TO THE GRANTING OF SUCH LEGAL AND EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT. THE COMPANY CONSENTS TO SERVICE OF PROCESS, IN ACCORDANCE WITH NEW YORK LAW, BY THE MAILING OF COPIES THEREOF BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, TO THE COMPANY AT ITS ADDRESS SET FORTH ABOVE, SUCH SERVICE TO BECOME EFFECTIVE 10 DAYS AFTER SUCH MAILING. ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR ACTION ARISING OUT OF THIS AGREEMENT OR CONDUCT IN CONNECTION WITH THIS ENGAGEMENT IS HEREBY WAIVED.

j. *Counterparts, Entire Agreement, Severability and Rules of Construction.* This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same instrument. This Agreement embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect the Agreement in any other respect, which will remain in full force and effect. Words and phrases used in this Agreement shall be construed in accordance with section 102(1)-(7) and (9) of the Bankruptcy Code.

k. *Binding Effect, Beneficiaries.* This Agreement shall be binding upon Miller Buckfire and the Company and their respective successors and assigns (including, in the case of the Company, any successor to all or a portion of the assets or businesses of the Company under a Plan). If the Company is comprised of more than one entity or company, the obligations of the Company under this Agreement are joint and several, and any consent, direction, approval, demand, notice or the like given by any one of such entities or companies shall be deemed to

8

Case 2:23-bk-02832-DPC Doc 141 Filed 05/25/23 Entered 05/25/23 17:42:06 Desc
Main Document Page 14 of 20

be given by all of them and, as such, shall be binding on the Company. This Agreement is not intended to confer any rights upon any shareholder, creditor, owner or partner of the Company, or any other person or entity not a party hereto other those referenced in the Indemnification Provisions.

l.  *Amendments.* No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby.

*The remainder of this page is intentionally blank.*

We are pleased to accept this engagement and look forward to working with the Company. Please confirm that this Agreement is in accordance with your understanding by signing and returning a copy to us.

Very truly yours,

MILLER BUCKFIRE & CO., LLC

By: *(signature)*

Name: Christine Song

Title: Managing Director


STIFEL, NICOLAUS & CO., INC.

By: *(signature)*

Name: Chad M. Gorsuch

Title: Managing Director


Accepted and Agreed to:

LEGACY CARES, INC.

By: *(signature)*

Name: Douglas Moss

Title: President

Legacy Cares, Inc.
As of March 15, 2023

## INDEMNIFICATION PROVISIONS

In connection with the engagement of Miller Buckfire as financial advisor to the Company, the Company hereby agrees to indemnify and hold harmless Miller Buckfire and its affiliates, their respective directors, officers, members, managers, agents, employees and controlling persons, and each of their respective successors and assigns (collectively, the "*Indemnified Persons*"), to the full extent lawful, from and against all losses, claims, damages, liabilities and expenses incurred by them which (A) are related to or arise out of (i) actions or alleged actions taken or omitted to be taken (including any untrue statements made or any statements omitted to be made) by the Company or (ii) actions or alleged actions taken or omitted to be taken by an indemnified person with the Company's consent or in conformity with the Company's actions or omissions or (B) are otherwise related to or arise out of Miller Buckfire's engagement under this agreement or any transaction or conduct in connection therewith. The Company will not be responsible, however, for any losses, claims, damages, liabilities or expenses pursuant to clause (B) of the preceding sentence which are finally judicially determined to have resulted primarily from the gross negligence or willful misconduct of the person seeking indemnification hereunder.

After receipt by an Indemnified Person of notice of any complaint or the commencement of any action or proceeding with respect to which indemnification is being sought hereunder, such Indemnified Person will, within 20 days of such receipt, notify the Company in writing of such complaint or of the commencement of such action or proceeding, but failure to timely notify the Company will relieve the Company from any liability which the Company may have hereunder only if, and to the extent that such failure results in the forfeiture by the Company of substantial rights and defenses or otherwise prejudices the Company, and will not in any event relieve the Company from any other obligation or liability that the Company may have to any Indemnified Person apart from these indemnification provisions. If the Company so elects or is requested by such Indemnified Person, the Company will assume the defense of such action or proceeding, including the employment of counsel reasonably satisfactory to the Company and Miller Buckfire and the Indemnified Person and the payment of the fees and disbursements of such counsel. In the event, however, such Indemnified Person reasonably determines in its judgment that having common counsel would present such counsel with a conflict of interest or if the defendants in, or targets of, any such action or proceeding include both an Indemnified Person and the Company, and such Indemnified Person reasonably concludes that there may be legal defenses available to it or other Indemnified Persons that are different from or in addition to those available to the Company, or if the Company fails to assume the defense of the action or proceeding or to employ counsel reasonably satisfactory to such Indemnified Person, in either case in a timely manner, then such Indemnified Person may, subject to agreement with the Company on the selection of counsel, employ separate counsel to represent or defend it in any such action or proceeding and the Company will pay the fees and disbursements of such counsel; provided, however, that the Company will not be required to pay the fees and disbursements of more than one separate counsel (in addition to local counsel) for all Indemnified Persons in any jurisdiction in any single action or proceeding. In any action or proceeding the defense of which the Company assumes, the Indemnified Person will have the right to participate in such litigation and to retain its own counsel at such Indemnified Person's own expense. The Company further agrees that it will not, without the prior written consent of Miller Buckfire, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification or contribution may be sought and is reasonably foreseeable hereunder (whether or not Miller Buckfire or any other indemnified person is an actual or potential party to such claim, action, suit or proceeding) unless such settlement, compromise or consent includes an unconditional release of Miller Buckfire and each Indemnified Person hereunder from all liability arising out of such claim, action, suit or proceeding.

The Company agrees that if any indemnification sought by an Indemnified Person pursuant to these indemnification provisions is held by a court to be unavailable for any reason other than as specified in the second sentence of the first paragraph of these indemnification provisions, then (whether or not Miller Buckfire is the Indemnified Person), the Company and Miller Buckfire will contribute to the losses, claims,

1

damages, liabilities and expenses for which such indemnification is held unavailable (i) in such proportion as is appropriate to reflect the relative benefits to the Company, on the one hand, and Miller Buckfire, on the other hand, in connection with Miller Buckfire's engagement referred to above, or (ii) if the allocation provided by clause (i) above is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i), but also the relative fault of the Company, on the one hand, and Miller Buckfire, on the other hand, as well as any other relevant equitable considerations; provided however, that in any event the aggregate contribution of all Indemnified Persons, including Miller Buckfire, to all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder will not exceed the amount of fees actually received by Miller Buckfire from the Company pursuant to Miller Buckfire's engagement referred to above. It is hereby agreed that for purposes of this paragraph, the relative benefits to the Company, on the one hand, and Miller Buckfire, on the other hand, with respect to Miller Buckfire's engagement shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received by the Company or the Company's stockholders, claims holders or contract parties, as the case may be, pursuant to the transaction, whether or not consummated, for which Miller Buckfire is engaged to render financial advisory services, bears to (ii) the fee paid or proposed to be paid to Miller Buckfire in connection with such engagement. It is agreed that it would not be just and equitable if contribution pursuant to this paragraph were determined by pro rata allocation or by any other method which does not take into account the considerations referred to in this paragraph. The entirety of this paragraph is subject to compliance with applicable law and court orders.

Upon timely notice, the Company further agrees that it will promptly reimburse Miller Buckfire and any other Indemnified Person hereunder for all expenses (including fees and disbursements of counsel) as they are incurred by Miller Buckfire or such other Indemnified Person in connection with investigating, preparing for or defending, or providing evidence in, any pending or threatened action, claim, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not Miller Buckfire or any other Indemnified Person is a party). The prevailing party in action to enforce these indemnification provisions shall be entitled to recover its reasonable attorneys' fees and costs incurred in such enforcement action.

Solely for purposes of enforcing these indemnification provisions, the Company hereby consents to personal jurisdiction, service and venue in any court in which any claim or proceeding which is subject to, or which may give rise to a claim for indemnification or contribution under, these indemnification provisions is brought against Miller Buckfire or any other Indemnified Person.

These indemnification provisions shall apply to the related engagement, activities relating to the engagement occurring prior to the date hereof, and any subsequent modification of or amendment to such engagement, and shall remain in full force and effect following the completion or termination of Miller Buckfire's engagement.

The Company further agrees that none of the Indemnified Persons (other than Miller Buckfire) shall have any liability to the Company or any person asserting claims on behalf of the Company or in the Company's right for or in connection with the related engagement or any transactions or conduct in connection therewith except for losses, claims, damages, liabilities or expenses incurred by the Company which are finally judicially determined to have resulted primarily from the gross negligence or willful misconduct of such Indemnified Person; provided, however, that in no event shall the Indemnified Persons' (other than Miller Buckfire) aggregate liability to the Company or any person asserting claims on behalf of the Company or in the Company's right exceed the fees Miller Buckfire actually receives from the Company pursuant to its engagement hereunder, unless there is a final judicial determination of willful misconduct specified in this sentence.

Legacy Cares, Inc.
As of March 15, 2023

The Company's indemnity, contribution, reimbursement and other obligations under these indemnification provisions shall be in addition to any liability that the Company may otherwise have, at common law or otherwise, and shall be binding on the Company's successors and assigns.

* * *